**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

TYRONE KNIGHT,

      Petitioner,

:

Case No. 3:10-cv-068

:

   -vs-

District Judge Timothy S. Black
Magistrate Judge Michael R. Merz

DEBORAH TIMMERMAN-COOPER,
  Warden, London Correctional Institution

:

      Respondent.

**REPORT AND RECOMMENDATIONS**

This is a habeas corpus case brought *pro se* by Petitioner Tyrone Knight to obtain relief from his conviction in the Clark County Common Pleas Court on one count of aggravated arson and one count of murder. Tried by a jury, he was found guilty and sentenced to twenty years to life imprisonment. He pleads the following grounds for relief:

> **Ground One:** Self-incrimination. A confession is involuntary and therefore inadmissible if the suspect's request for an attorney is ignored following *Miranda* warnings.
>
> **Supporting Facts:** The defendant was being questioned by law-enforcement and as he was being questioned he asked for an attorney more than once, but ignored and the interrogation went on, there was talk about the electric-chair and other things that caused the defendant to confess out of fear.
>
> **Ground Two:** The uses of an inadmissible, involuntary confession admitted into evidence.
>
> **Supporting Facts:** After the officers extorted a confession out of the defendant the state used this tainted evidence to help gain a

conviction.

(Petition, Doc. No. 1, PageID 4.) Respondent filed a Return of Writ (Doc. No. 5) and Petitioner filed a Traverse (Doc. No. 8). In the Traverse, Petitioner reminds the Court that he is proceeding *pro se* and is therefore entitled to a liberal construction of his pleadings. *Haines v. Kerner*, 404 U.S. 519 (1972); *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001).

Knight took a direct appeal from his conviction. After his original counsel filed an *Anders* brief, the Second District Court of Appeals "discovered an arguable issue and that was whether Knight's confession to police was voluntarily made." *State v. Knight*, No. 04-CA-35, 2008 Ohio 4926 at ¶ 1, 2008 Ohio App. LEXIS 4132 (Ohio App. 2nd Dist. Sep. 26, 2008). As pled by counsel, the first assignment of error was that "the trial court erred in finding that his statements to the police were voluntarily, knowingly and intelligently made. Knight contends the police coerced his confession by promising him leniency and in ignoring his request for counsel." The court of appeals decided this assignment of error against Knight and on the merits. He then appealed to the Ohio Supreme Court which declined to exercise jurisdiction. *State v. Knight*, 2009 Ohio 805, 2009 Ohio LEXIS 585 (2009). Respondent agrees that Knight has exhausted available state court remedies and preserved his claims for habeas review.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 792 (2011); *Brown v. Payton,* 544 U.S. 133, 134 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362 (2000). Habeas court deference includes the presumption

that state court findings of fact are correct unless they are shown to be incorrect by clear and convincing evidence which was before the state court when it made its decision. 28 U.S.C. § 2254(d)(2).

The court of appeals determined that the confession in question had been videotaped and the appellate judges reviewed that tape[1], as well as a transcript. *State v. Knight, supra,* ¶ 6[2]. The issues presented had been preserved for appeal by being presented at a suppression hearing in the Common Pleas Court. Knight did not testify at that hearing, but his counsel presented the transcript, so it was also before the trial judge. *Id.* at ¶ 106.

The key questions before the court of appeals were

1. Was Knight in custody?

2. If he was in custody, did he unequivocally request an attorney?

3. Was his confession voluntary or coerced?

The appeals court analyzed those issues as follows:

> [*P107] The State must prove by a preponderance of the evidence that a defendant's confession is voluntary. *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L. Ed. 2d 618 (1972). In making that determination, a court should consider the totality of the circumstances. *State v. Barker* (1978), 53 Ohio St. 2d 135, 372 N.E.2d 1324. A suspect's decision to waive his privilege against self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically

---

[1] On the review of videorecordings as a basis for findings by an appellate court, *see Scott v. Harris,* 550 U.S. 372, 380 (2007); and *Marvin v. City of Taylor*, 509 F.3d 234 (6th Cir. 2007). See generally Bernadette M. Donovan, Deference in a Digital Age: The Video Record and Appellate Review, 96 Va. L. Rev. 643 (2010).

[2] Judge Donovan noted in her dissent that the transcript omitted that portion of the videotape in which Knight made his second reference to an attorney. *State v. Knight, supra,* at ¶ 117.

impaired because of coercive police conduct. *State v. Otte,* 74 Ohio St.3d 555, 1996 Ohio 108, 660 N.E.2d 711.

[*P108]  In *State v. Brown,* 100 Ohio St.3d 51, 55, 2003 Ohio 5059, 796 N.E.2d 506, cert. denied, 540 U.S. 1224, 124 S. Ct. 1516, 158 L. Ed. 2d 162 (2004), the Ohio Supreme Court elaborated on the test for voluntariness:
> In determining whether a pretrial statement is involuntary, a court 'should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'"

[*P110]  Appellant was 23 years of age at the time he made his confession to the police. The videotape indicates Knight was an intelligent young man. Knight was not under arrest when he gave his statement to the police and although the police were not required to give Knight the Miranda warning, they did so before questioning him and later again during the interrogation. Danita Knight suggested her son talk to the police and he expressed a willingness to do so. (Def. Ex. A at 1.) The questioning occurred over a two-hour period, but the police permitted Knight an opportunity to take small breaks. Knight was informed by Detective Eggers that he was not under arrest and that he was free "to go anywhere you want." (Def. Ex. A at 25.) Detective Eggers told Knight that he wasn't being truthful with him and he was "strapping [himself] in the chair." (Def. Ex. A at 23.) Eggers informed Knight that the police had evidence that he was responsible for the fire but he believed Knight did not intend to kill anybody. (Def. Ex. A at 23.) Eggers told Knight that it was time to tell the truth. Eggers told Knight to tell the truth or the prosecutor would charge him with aggravated murder and try to put him in the chair. (Def. Ex. A at 24.) After Knight admitted setting the fire, he told Detective Eggers that he had asked God to give him the strength to make it right and he intended to come to the police before he eventually did. (Def. Ex. A at 44.)

[*P111]  In *State v. Cooey* (1989), 46 Ohio St.3d 20, 28, 544 N.E.2d 895, the Ohio Supreme Court stated that admonitions to tell the truth directed at a suspect by police officers are not coercive in nature. Cooey claimed that a police officer "threatened" him by warning him that if he had lied, he had "buried" himself. The court held these were neither threats nor promises, but permissible admonitions to tell the

-4-

truth. See also, *State v. Wiles* (1991), 59 Ohio St.3d 71, 571 N.E.2d 97.  Police assertions that the suspect had theretofore been lying or would have no later chance to tell his side of the story do not automatically render a confession involuntary. *United States v. Gamy* (9th Cir. 2002), 301 F.3d 1138; *United States v. Wolf* (9th Cir. 1987), 813 F.2d 970.

[*P112]  The California Supreme Court has held that while the fact a statement was obtained despite the defendant's invocation of the right to counsel is one of the circumstances bearing on the voluntariness of a defendant's statement, it is not dispositive. *People v. Bradford* (1997), 14 Cal.4th 1005, 1041, 60 Cal. Rptr. 2d 225, 929 P.2d 544; 14 Cal. 4th 1005, 60 Cal. Rptr. 2d 225, 929 P.2d 544. Recently the same court held a defendant's statement voluntary despite his repeated invocations of his right to counsel. *People v. Jablonski* (2006), 37 Cal.4th 774, 38 Cal. Rptr. 3d 98, 126 P.3d 938. It is reasonably clear that a request for counsel by the accused who is not in police custody is but one factor to consider in determining whether his statement is voluntary. In this case, Knight, at best, made two equivocal requests for counsel. When asked by Detective Eggers whether Knight was saying he needed an attorney, Knight replied he didn't know.

 [*P113] Coercive police activity is a necessary predicate to finding that a confession is not voluntary. In this case, it is significant that Knight's mother suggested he go to the police and explain his involvement in the fire. It is also significant that Knight admitted he wanted to make things right and had intended to come speak to the police before the police called his mother. Any pressure Knight felt from his own conscience to square things with his victim was not the result of police coercion. *Colorado v. Connelly* (1986), 479 U.S. 157, 107 S.Ct. 515, 93 L. Ed. 2d 473. We are satisfied that the State proved that Knight's confession was a voluntary one. There is no indication that Knight's will was overborne or that his capacity for self-determination was critically impaired because of police coercive conduct. *State v. Otte, supra.* The Appellant's first assignment of error is Overruled.

*State v. Knight, supra*, ¶¶ 107-113.

There does not appear to have been any dispute about the relevant underlying historical facts.

And the court of appeals says nothing about giving any weight to findings or conclusions of the trial

court judge. Instead, they reviewed the raw evidence, the videotape of the interrogation and confession, themselves and apparently considered the evidence *de novo*. Under §2254(e)(1), a state court's findings of fact are presumed correct and may be rebutted by the petitioner only by clear and convincing evidence to the contrary. *Cornwell v. Bradshaw*, 559 F.3d 398, 405 (6th Cir. 2009); *Mitchell v. Mason,* 325 F.3d 732, 737-38 (6th Cir. 2003); *Warren v. Smith,* 161 F.3d 358, 360-61 (6th Cir. 1998). This statutory presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records. *Girts v. Yanai,* 501 F.3d 743, 749 (6th Cir. 2007); *Mason v. Mitchell,* 320 F.3d 604, 614 (6th Cir. 2003); *Brumley v. Wingard,* 269 F.3d 629, 637 (6th Cir. 2001), citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981).

In determining whether a state court decision is or is not a reasonable application of federal law, the critical question under Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA") is what the state court decided, not its explanation for its decision and not whether it cited federal law or, as happened here, state case law embodying federal constitutional principles. *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770 (2011).

Whether a person is in custody so that *Miranda* applies is a question of federal law with deference to the state courts on the underlying historical facts.

> The *Miranda* Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda,* 384 U.S. at 444. A suspect is "in custody" for purposes of receiving *Miranda* protection if there has been a "formal arrest or restraint on freedom of movement." *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977). "[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California,* 511 U.S. 318, 323 (1994) (per curiam). *Miranda* warnings are not required "simply because the questioning takes place in the station

> house, or because the questioned person is one whom the police suspect." *California v. Beheler,* 463 U.S. 1121, 1125 (1983) (per curiam) (quoting *Mathiason,* 429 U.S. at 495). "[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty,* 468 U.S. 420, 442 (1984).

*Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).  *See also Thompson v. Keohane*, 516 U.S. 99, 116 S. Ct. 457, 133 L. Ed. 2d 383 (1995)(question of whether a suspect is in custody for *Miranda* purposes is a mixed question of law and fact, qualifying for independent review)[pre-AEDPA].  To the same effect post-AEDPA is *United States v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1998).

The majority of the court of appeals found Knight was not in custody, noting that he had come to the police department voluntarily and was told several times that he was free to leave.  In dissent Judge Donovan emphasized that there would have been no reason to Mirandize Knight if he was not in custody, that he was interviewed in a small room by three law enforcement officers, that his first request for a break was ignored, and that the questioning was accusatory.  She does not deny, however, that the officers' statements to him that he could leave were unequivocal or that he did take a break before making a confession.  There is also no showing that it is the unvarying practice of this particular police department or of police officers generally only to give *Miranda* warnings when they have taken someone into custody.  Upon the facts as found by the court of appeals, the Magistrate Judge cannot say that the determination that Knight was not in custody was an objectively unreasonable application of clearly established federal law.

The question whether a request for counsel was unequivocal appears to be a question of ultimate fact: what was intended to be communicated and what would the reasonable hearer understand was being communicated?  The court of appeals majority elided this question because they concluded Knight was not in custody.  Having found Knight was in custody, Judge Donovan

would also have found the request for counsel sufficiently clear to be determinative. The Supreme Court has held "if an accused makes a statement concerning his right to counsel 'that is ambiguous or equivocal' or makes no statement, the police are not required to end the interrogation . . . or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights." *Berghuis v. Thompkins,* 560 U.S. ___, 130 S. Ct. 2250 (2010)*, supra*, *citing Davis v. United States*, 512 U.S. 452, 461-62 (1994).

    What Knight said in context was:

> [*P8] "Eggers: You've got problems, okay. And I heard that you were gonna come down here to talk to us. I thought it was because you were gonna set the record straight. And I've been listening to what's going on in here and basically you're strapping yourself in the chair.
>
> [*P9] "A: Well, can I talk to my lawyer then if there is something wrong like that? Do I need one or something?
>
> \* \* \*
>
> [*P21] "A: May I find representation?
>
> [*P22] "Eggers: Do what?
>
> [*P23] "A: If I need representation, I'll find that?
>
> [*P24] "Eggers: What do you mean?
>
> [*P25] "A: By a counselor or something.
>
> [*P26] "Eggers: Is that what you are saying that you need an attorney?
>
> [*P27] "A: I don't know.
>
> [*P28] "Eggers: Well only you can say.

*State v. Knight, supra*, at paragraphs cited. These statements by Knight are sufficiently equivocal

to come within the decision in *Davis v. United States*, 512 U.S. 452 (1994). Many lower courts have found similar statements to be equivocal. See LaFave, Israel, King and Kerr, Criminal Procedure 3d § 6.9(g) at n. 166. Even assuming that Knight was in custody and had not effectively waived his *Miranda* rights, the Magistrate Judge cannot say the court of appeals decision was an objectively unreasonable application of clearly established federal law on the question of an unequivocal request for an attorney.

Voluntariness of a confession is also a legal question for the federal habeas court, not a factual question on which state court's conclusion is presumed to be correct. *Miller v. Fenton*, 474 U.S. 104 (1985). However, the underlying findings of historical fact by state courts are presumptively correct. The court of appeals majority found Knight appeared to be intelligent and had finished twelve years of school. He had some prior experience with the criminal justice system, although as Judge Donovan notes, it was in relatively minor offenses. He came to the police at his mother's suggestion. He was not ill or undergoing the effects of alcohol or drug withdrawal so far as the record shows. The interrogation was over a two-hour period which does not seem to be inherently "extended." Knight was given some breaks at his request. There is no record evidence he was kept in hunger or thirst or deprived of restroom facilities.

Judge Donovan in dissent asserts Knight was subject to the "torture of fear" by being threatened with the electric chair which was no longer a legal method of execution in Ohio at the time of this case[3]. *State v. Knight, supra,* at ¶ 116. Detective Eggers in the course of the

---

[3]Electrocution as a method of execution was available at the option of the defendant until late 2001 when the General Assembly abolished it in the face of choice by John Byrd for electrocution over lethal injection because Byrd wanted to expose the cruelty of electrocution as a method of execution. Judge Donovan cites the statutory change, R.C. § 2949.22, 2001 H 362 eff. 11-21-01, in her opinion. *State v. Knight, supra*, at ¶ 116.

interrogation said to Knight "[a]nd I've been listening to what's going on in here and basically you're strapping yourself in the chair." *Id.* at ¶ 8. Later he said "[a]ll I want you to do is set the record straight and like I said, the only way you're gonna convince the prosecutor that you're sorry for what happened is to tell the truth or he's gonna charge you with aggravated murder and try to put you in the chair." *Id.* at ¶ 33. Finally, he said "[w]e're not here to judge you, we're not here to strap you in the chair." The only use of the exact phrase "electric chair" is in Judge Donovan's dissent, but Knight certainly would have understood and plainly was meant to understand that he could face execution for what he had done. "Getting the chair" is still a sufficiently widespread colloquialism for receiving a capital sentence that Knight undoubtedly understood what Detective Eggers meant. However, Knight did not testify at the suppression hearing and there is no evidence he understood Eggers as threatening him with electrocution or that he found the threat of electrocution more terrifying than that of lethal injection.

There is no dispute that this case could have been indicted and tried capitally. There certainly have been cases in recent Ohio history where defendants were convicted and sentenced to death for aggravated arson and such a sentence might indeed be more likely where the victim was completely uninvolved in the fight between his relatives and Mr. Knight. There is no case law known to the undersigned in which threatening a defendant with the possible legal consequences of a conviction has been held to be unduly coercive.

In sum, the Magistrate Judge concludes that the court of appeals' decision is not an objectively unreasonable application of clearly established Supreme Court precedent nor based on an unreasonable determination of the facts in light of the evidence before the state courts.

However, the Magistrate Judge's conclusion is certainly debatable among reasonable jurists.

Judge Donovan is a very experienced appellate judge, following service as a general jurisdiction trial judge and criminal defense lawyer. Her conclusions to the contrary mean that Petitioner should be granted a certificate of appealability and leave to proceed on appeal *in forma pauperis*.

February 17, 2012.

s/ **Michael R. Merz**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

J:\Documents\Knight habeas R&R.wpd